IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL NO. 3:17-CR-134-19-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| CYNTHIA GILMORE, ) | |
| ) | |
| Defendant. ) | |

THIS MATTER is before the Court on the Defendant's "Motion to Suppress and in Limine," Doc. 892, filed on December 3, 2017. Defendant's "Brief by Gilmore in Support of Motion to Suppress and in Limine," Doc. 903, was filed on December 11, 2017. The "Government's Opposition to Defendant (19) Gilmore's Motion to Suppress and in Limine," Doc. 930, was filed on December 20, 2017. The Court conducted an evidentiary hearing on January 25, 2018.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the record and following an evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress and Motion in Limine be denied, as discussed below.

### I.     FACTUAL BACKGROUND AND FINDINGS

Defendant Gilmore is charged with one count of participating in a racketeering conspiracy in furtherance of the Nine Trey Gangster "Hood" of the United Blood Nation. During the hearing,

the Court heard testimony from former Raleigh Police Officer Ross Weatherspoon, Officer Brandon Johnson, and FBI Special Agent Chad Pupillo.

On August 10, 2011 at approximately 4:00 a.m. Raleigh police officers Ross Weatherspoon and Brandon Johnson heard a radio transmission reporting a shooting and home invasion at a residential development in the vicinity of Woodmeadow Parkway and Sunnybrook Road. A second radio transmission advised that a suspect vehicle had been stopped by officers on Woodmeadow Parkway. Two suspects were detained at the scene and a third had fled on foot. The fleeing suspect was described as a black male, five feet eight or nine inches tall, and weighing around 150 pounds. Officers Weatherspoon and Johnson responded to the scene. Officer Johnson initially drove through the development in search of the fleeing suspect. He then joined Officer Weatherspoon who had set up a perimeter near the entrance to the development on Pleasant Garden Lane.

Within approximately twenty minutes of setting up the perimeter, the officers observed a Nissan Ultima approaching en route to leaving the development. The officers flagged down the Ultima and it stopped on Pleasant Garden Lane. This was the first vehicle spotted by the officers since setting up the perimeter. The officers intended to flag down any vehicle leaving the development. They planned to ask the occupants of the vehicle if they had seen anyone matching the description of the fleeing suspect.

Officer Weatherspoon approached the passenger side while Officer Johnson approached the driver. Officer Weatherspoon observed what he described as a "black mass" in the back seat. He quickly realized that this was a person lying across the back seat of the vehicle. Officer Johnson secured both Defendant Cynthia Gilmore who was the driver and the front seat passenger. Officer Weatherspoon removed the third individual from the back seat. This individual matched the

description of the fleeing suspect. He appeared nervous and was breathing heavily. His pants were wet and covered with grass and mud. A Raleigh police captain who was involved in the original stop of the suspect vehicle arrived and identified the individual from the back seat as the one who fled the scene.

Defendant admitted to the officers that she knew the individual who was lying across the back seat and had picked him up from some nearby apartments. Officers transported Defendant to the police station for further questioning. Defendant was then charged with being an accessory after the fact in violation of state law.

Officers seized Defendant's cell phone and turned it in to the police department's property section. The Raleigh Police Department Evidence Control Form indicates that the phone was checked into evidence that same day. Defendant's phone was checked out of property along with other seized items for the trial of her co-defendants in state court during August and September 2012. The charges against Defendant were ultimately dismissed in September 2012. The evidence log shows that her phone remained in the Raleigh police property section until FBI agents obtained custody of it on October 20, 2017. On October 23, 2017, a U.S. Magistrate Judge in this District issued a search warrant for Defendant's phone based upon an application from an FBI agent. Examination of the phone's contents revealed a connection to the email address "cynthiagilmore75" as well as other self- identifying information relating to Defendant. Defendant has never attempted to claim her phone from the Raleigh Police Department.

## II. ANALYSIS

Defendant asserts that her Fourth Amendment rights were violated because law enforcement officers lacked reasonable suspicion to stop the car she was driving on August 10, 2011 as well as probable cause to arrest her. Therefore the seizure of her cell phone was unlawful.

Defendant also claims that the Government cannot establish the cell phone's authenticity or chain of custody.

The Government asserts that Defendant lacks standing to object to the seizure of her cell phone. The Government argues that she abandoned the phone by failing to claim it from the Raleigh Police Department following the 2012 dismissal of charges against her. The Fourth Circuit has held that "to establish standing for asserting a violation of the [F]ourth Amendment, a person must show a legitimate expectation of privacy in the area searched." United States v. Hargrove, 647 F.2d 411, 412 (4th Cir. 1981) (internal quotation marks omitted). The Court finds that Defendant had a legitimate expectation of privacy in her cell phone when it was seized from her person on August 10, 2011. Consequently, she has standing to challenge the seizure of her phone.

"A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." City of Indianapolis v. Edmond, 531 U.S. 32, 37 (2000). Despite this general rule, the Supreme Court has recognized "limited circumstances in which the usual rule does not apply," id., and has rejected the idea that there is an "automatic unconstitutionality to brief, information-seeking . . . stops," Illinois v. Lidster, 540 U.S. 419, 424 (2004). "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." Florida v. Royer, 460 U.S. 491, 497 (1983). Among the circumstances not requiring individualized suspicion is where law enforcement officers seek to "ask vehicle occupants, as members of the public, for their help in providing information about a crime in all likelihood committed by others." Lidster, 540 U.S. at 423. The goal of such a stop is for the police to elicit information "to help them apprehend, not the vehicle's occupants, but other

individuals." Id. The test to determine whether such a stop violates the Fourth Amendment is whether it was reasonable under the circumstances. Id. at 426-27. "[I]n judging reasonableness, [courts] look to the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Id. at 427 (internal quotation marks omitted).

Here, police were investigating a home invasion and shooting that had taken place about twenty minutes earlier. An occupant of the suspect vehicle had fled on foot. In response, officers set up a perimeter in an attempt to elicit information from any passing motorists to aid in the apprehension of the fleeing suspect. The officers had reason to believe that this suspect was armed and dangerous since a shooting had just occurred. They flagged down the only car they encountered to inquire as to whether its occupants had seen the fleeing suspect. Any interference with Defendant's individual liberty was minimal when officers flagged down her vehicle. Unlike in Lidster, there was no formal police checkpoint here. However, the facts are analogous since the officers intended to flag down any vehicles crossing the perimeter.

Upon approaching the car, Officer Weatherspoon immediately observed a person lying across the back seat in a suspicious manner. He was sweating profusely and his pants were wet and muddy. Defendant admitted knowing this individual and having picked him up nearby. Defendant and one of her other passengers subsequently gave police inconsistent statements about the individual in the back seat. Defendant's arrest for accessory after the fact is supported by probable cause. Thus Defendant's phone was lawfully seized incident to arrest.

Federal Rule of Evidence 901 provides that the proponent of evidence need only produce "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. As the Fourth Circuit recently reiterated, "[t]he burden to authenticate under Rule 901

is not high—only a prima facie showing is required." United States v. Kaixiang Zhu, 854 F.3d 247, 257 (4th Cir. 2017) (per curiam). The court functions as a gatekeeper to ensure that the proponent "has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." Id. "It is up to the jury to decide whether evidence is that which the proponent claims." See id. (district court properly admitted email over objection and questions regarding its authenticity "go to its weight, not its admissibility, and counsel . . . was free to highlight these deficiencies during cross examination"). Moreover, the proponent of certain evidence "need not establish a perfect chain of custody or documentary evidence to support their admissibility." See United States v. Vidacak, 553 F.3d 344, 350-51 (4th Cir. 2009) (holding that appropriate showing may be made through circumstantial evidence that documents are what they purport to be, especially where defendant had "no basis for inferring that the exhibits were forged or altered that would arouse this Court's suspicion as to their authenticity").

The Government has produced the Raleigh Police Department Evidence Control Form identifying Defendant's phone and documenting the chain of custody. Any remaining issues regarding authenticity or chain of custody are reserved for the jury.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Defendant's "Motion To Suppress and in Limine" be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v.

Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED.**

Signed: January 29, 2018

_____
David S. Cayer
United States Magistrate Judge