UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00134-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| CYNTHIA GILMORE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Defendant Cynthia Gilmore's "Objections to Magistrate Judge's Memorandum and Recommendation" (the "Objection"). (Doc. No. 1033). The Memorandum and Recommendation ("M&R") (Doc. No. 1015) entered on January 29, 2018, by the magistrate judge recommended this Court deny Defendant's "Motion to Suppress in Limine" (the "Motion") (Doc. No. 892). The Government responded in opposition to Defendant's Objection (Doc. No. 1093), arguing the M&R correctly recommends denial of Defendant's Motion to Suppress. After reviewing the briefs, testimony, and evidence presented before the magistrate judge, for the reasons set forth, the Court OVERRULES Defendant's Objections, ACCEPTS and ADOPTS the M&R, and DENIES Defendant's Motion.

**I. STANDARD OF REVIEW**

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(2)-(3); see also 28 U.S.C. § 636. The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed

1

findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## II. FINDINGS OF FACT

The M&R summarizes the factual background and findings based on the evidence presented relevant to the instant motion:

> Defendant Gilmore is charged with one count of participating in a racketeering conspiracy in furtherance of the Nine Trey Gangster "Hood" of the United Blood Nation. During the hearing, the Court heard testimony from former Raleigh Police Officer Ross Weatherspoon, Officer Brandon Johnson, and FBI Special Agent Chad Pupillo.
>
> On August 10, 2011 at approximately 4:00 a.m. Raleigh police officers Ross Weatherspoon and Brandon Johnson heard a radio transmission reporting a shooting and home invasion at a residential development in the vicinity of Woodmeadow Parkway and Sunnybrook Road. A second radio transmission advised that a suspect vehicle had been stopped by officers on Woodmeadow Parkway. Two suspects were detained at the scene and a third had fled on foot. The fleeing suspect was described as a black male, five feet eight or nine inches tall, and weighing around 150 pounds. Officers Weatherspoon and Johnson responded to the scene. Officer Johnson initially drove through the development in search of the fleeing suspect. He then joined Officer Weatherspoon who had set up a perimeter near the entrance to the development on Pleasant Garden Lane.
>
> Within approximately twenty minutes of setting up the perimeter, the officers observed a Nissan Ultima approaching en route to leaving the development. The officers flagged down the Ultima and it stopped on Pleasant Garden Lane. This was the first vehicle spotted by the officers since setting up the perimeter. The officers intended to flag down any vehicle leaving the development. They planned to ask the occupants of the vehicle if they had seen anyone matching the description of the fleeing suspect.

Officer Weatherspoon approached the passenger side while Officer Johnson approached the driver. Officer Weatherspoon observed what he described as a "black mass" in the back seat. He quickly realized that this was a person lying across the back seat of the vehicle. Officer Johnson secured both Defendant Cynthia Gilmore who was the driver and the front seat passenger. Officer Weatherspoon removed the third individual from the back seat. This individual matched the description of the fleeing suspect. He appeared nervous and was breathing heavily. His pants were wet and covered with grass and mud. A Raleigh police captain who was involved in the original stop of the suspect vehicle arrived and identified the individual from the back seat as the one who fled the scene.

Defendant admitted to the officers that she knew the individual who was lying across the back seat and had picked him up from some nearby apartments. Officers transported Defendant to the police station for further questioning. Defendant was then charged with being an accessory after the fact in violation of state law.

Officers seized Defendant's cell phone and turned it in to the police department's property section. The Raleigh Police Department Evidence Control Form indicates that the phone was checked into evidence that same day. Defendant's phone was checked out of property along with other seized items for the trial of her co-defendants in state court during August and September 2012. The charges against Defendant were ultimately dismissed in September 2012. The evidence log shows that her phone remained in the Raleigh police property section until FBI agents obtained custody of it on October 20, 2017. On October 23, 2017, a U.S. Magistrate Judge in this District issued a search warrant for Defendant's phone based upon an application from an FBI agent. Examination of the phone's contents revealed a connection to the email address "cynthiagilmore75" as well as other self-identifying information relating to Defendant. Defendant has never attempted to claim her phone from the Raleigh Police Department.

(Doc. No. 1015, pp. 1-3.)

Throughout the Objection, Defendant generally challenges and broadly asserts error in the M&R's findings of fact, arguing the M&R omits and minimizes "critical" testimony and facts. (Doc. No. 1033, pp. 4, 5, 7.) First, these generic objections do not trigger *de novo* review. Orpiano, 687 F.2d at 47. Defendant's arguments, instead, appear to broadly challenge the witnesses' credibility. "[I]t is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." U.S. v. Abu Ali, 528 F.3d 210, 232 (4th Cir.

2008). By referring the instant motion to the magistrate judge for M&R, it becomes the duty of the magistrate judge to observe witnesses and weigh credibility. A "de novo determination is not necessarily the same as a de novo hearing ... even as to those findings based on the magistrate's judgment as to the credibility of the witnesses before him." Proctor v. State Government of North Carolina, 830 F.2d 514, 518 n. 2 (4th Cir.1987). Section 636(b) "grants the [district] judge the broad discretion to accept, reject, or modify the magistrate's proposed findings" United States v. Raddatz, 447 U.S. 667 at 680 (1980), and "it is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal." Id. at 681 n. 7. The Court has reviewed the hearing transcript, including testimony and evidence, and defers to and agrees with the magistrate judge's findings of witness credibility, as such findings are supported by the record.

Second, the gravamen of Defendant's objections concern the lack of an "authoritative source" or evidence to support the findings of fact. (Doc. No. 1033, pp. 8.) Despite Defendant's objections, the testimony and other evidence presented during the suppression hearing supports the findings of fact. Accordingly, finding no error, the Court hereby adopts the M&R's findings of fact. (Doc. No. 1015, pp. 1-3).

### III. CONCLUSIONS OF LAW

In addition to general objections to the findings of fact, Defendant contends the M&R errs by concluding her Fourth Amendment rights were not violated during the stop and subsequent arrest. The M&R concludes the stop and subsequent arrest was appropriate under Illinois v. Lidster, 540 U.S. 419 (2004).

4

In Lidster, the Supreme Court considered whether the Fourth Amendment barred a highway checkpoint where police stopped motorists to ask them for information about a recent hit-and-run accident. Lidster, 540 U.S. at 421. In light of the facts in that case, the Court held "the police stops were reasonable, hence, constitutional." Id. Similarly, here, the evidence showed the officers were investigating a home invasion robbery and shooting that had taken place earlier that night a few miles away. Officers had stopped a Durango—which matched the description of the getaway vehicle given by a victim—and identified three of the four suspects directly involved in the crimes. A fourth suspect fled the Durango on foot. In response, police officers set up a perimeter around and within the immediate neighborhood where the suspect had fled in order to contain the suspect. Officers had reason to believe this suspect was armed and dangerous because the robbery also involved a shooting. As officers searched for the suspect who had fled, they flagged down a car driving through the neighborhood, only a few hundred feet from where the Durango stop occurred and where the suspect was last seen on foot. Officer Weatherspoon testified that he would have flagged down any car he saw in order to ask whether they had seen the suspect. Defendant's vehicle was the only vehicle to approach the perimeter, and once the car stopped, officers could easily observe a person lying down in the back seat. The officers testified the person lying the back of the vehicle was crouched in a suspicious fashion and matched the description of the suspect who had fled the Durango on foot. There is no evidence in the record that Defendant could not have simply driven past as officers flagged her down with flashlights from the side of the road while they were on foot. Indeed, the testimony shows the officers were not intending to set up a road block or checkpoint.[1]

---

[1] Even were this to be considered a checkpoint, the Court finds the facts here – particularly the close proximity to the area where the suspect had fled on foot within the previous thirty minutes – justify the stop. See City of Indianapolis

In Lidster, the Supreme Court recognized that in terms of an information-seeking motorist stop, "the context here (seeking information from the public) is one in which, by definition, the concept of individualized suspicion has little role to play. Like certain other forms of police activity, say, crowd control or public safety, an information-seeking stop is not the kind of event that involves suspicion, or lack of suspicion, of the relevant individual." 540 U.S. at 424–25; see also United States v. Johnson, 122 F. Supp. 3d 272, 375 (M.D.N.C. 2015) ("checkpoints operated with the primary purpose of obtaining information about a crime are constitutionally valid."). The Court finds the investigative purpose behind the officers' stop of Defendant's vehicle to be permissible.

Once a court determines that a checkpoint's primary purpose is a permissible one, the inquiry does not end. Lidster requires this Court to also consider the reasonableness of the particular checkpoint in question on the basis of its individual circumstances. 540 U.S. at 426–27. This requires balancing three factors: "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Id. at 427 (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)). "Factors to weigh intrusiveness include whether the checkpoint: (1) is clearly visible; (2) is part of some systematic procedure that strictly limits the discretionary authority of police officers; and (3)

---

v. Edmond, 531 U.S. 32, 44 (2000) ("[T]he Fourth Amendment would almost certainly permit an appropriately tailored roadblock set up to thwart an imminent terrorist attack or to catch a dangerous criminal who is likely to flee by way of a particular route."); see also United States v. Whitehead, 567 F. App'x 758, 767 (11th Cir. 2014) (unpublished) (per curiam) (approving perimeter checkpoint where "[t]he perpetrator [] was an armed and dangerous criminal, who had—minutes before—successfully robbed" a bank and "[l]aw enforcement knew that the robber had fled the area on foot, and there was a real risk that, to complete his escape, he would need a get-away vehicle and that someone could be harmed in his attempt to gain access to that vehicle"); United States v. Abbott, 265 F. App'x 307, 309 (5th Cir. 2008) (unpublished) (per curiam) (roadblock permissible where officers were able to "narrow their search to a relatively small area in which there was a high likelihood of apprehending the suspects" involved in an armed bank robbery).

detains drivers no longer than is reasonably necessary to accomplish the purpose of checking a license and registration, unless other facts come to light creating a reasonable suspicion of criminal activity." U.S. v. Henson, 351 F. App'x 818, 821 (4th Cir. 2009).

Here, a balancing of these factors clearly weighs in favor of the Government. The gravity of the public's concerns served by the stop included the officers' goal to obtain information regarding the whereabouts of a potentially armed suspect within a residential community at 4 a.m. in the morning. The stop also advanced the public interest in apprehending the suspect. As to the third factor, the severity of the interference was minimal, in that officers intended to stop any passing motorist in the visible road way for a short time to inquire about whether motorists had seen the suspect. Here, officers had barely engaged in the stop of Defendant's vehicle when they observed a suspicious person hiding in the back seat of her car.

For these reasons, the Court finds the evidence shows the officers' stop of Defendant's vehicle under these facts was for information gathering purposes and was reasonable. Further, the person matching the suspect description and attempting to hide in the back seat justified the officers' actions following the stop. See Henson, 351 F. App'x at 821; United States v. Lopez, 777 F.2d 543, 547 (10th Cir.1985) ("The law does not require the police to ignore evidence of other crimes in conducting legitimate roadblocks[ .]").

Finally, Defendant also asserts error in the M&R's conclusion that the Government sufficiently authenticated the chain of custody for the phone seized from Defendant during the August 2011 arrest. The M&R and the parties cite to Federal Rule of Evidence 901.

> Under Rule 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). It is up to the jury to decide "whether evidence is that which the proponent claims."

7

U.S. v. Vidacak, 553 F.3d 344, 349 (4th Cir. 2009). It is "[t]he district court's role . . . to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." Id. "The burden to authenticate under Rule 901 is not high—only a prima facie showing is required." Id.

U.S. v. Kaixiang Zhu, 854 F.3d 247, 257 (4th Cir. 2017). The Supreme Court has made clear, "[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." U.S. v. Raddatz, 447 U.S. 667, 679, 100 S. Ct. 2406, 2414, 65 L. Ed. 2d 424 (1980) (citations omitted); see also Fed. R. Evid. 104(a), 1101(d)(1). Thus, Defendant's arguments as to "authenticity" are insufficient to show error by considering the challenged evidence at the suppression hearing or in the M&R. The Court finds no error in the M&R's conclusion, "The Government has produced the Raleigh Police Department Evidence Control Form identifying Defendant's phone and documenting the chain of custody." (Doc. No. 1015, p. 6.) To the extent Defendant's motion to suppress attempted to also assert a motion in limine to exclude the mobile phone from evidence *at trial* based on this authenticity argument, the Court denies that portion of Defendant's motion without prejudice to reassert such argument in a separate motion prior to or at trial.

### IV. CONCLUSION

A full and careful review of the M&R and other documents of record convinces the court that the recommendation of the magistrate judge is, in all respects, in accordance with the law and should be approved. Accordingly, the court adopts the M&R (Doc. No. 1015) except to the extent this Order supplements and/or modifies the reasoning, OVERRULES Defendant's Objection (Doc. No. 1033), and DENIES Defendant's Motion to Dismiss (Doc. No. 892).

8

IT IS THEREFORE ORDERED that Defendant's "Motion to Dismiss and in Limine" (Doc. No. 892) is DENIED.

IT IS SO ORDERED.

Signed: April 10, 2018

Frank D. Whitney
Chief United States District Judge