# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:21-cv-530-FDW
# (3:17-cr-134-FDW-DSC-19)

| | |
|---|---|
| CYNTHIA GILMORE, | ) |
| Petitioner, | ) |
| vs. | ) ORDER |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and the Government's Motion to Dismiss, (Doc. No. 9).

## I. BACKGROUND[1]

Petitioner Cynthia Gilmore, a/k/a "Cynthia Young" and "Lady Bynt," was charged in a 72-count Superseding Bill of Indictment in a RICO conspiracy involving the United Blood Nation ("UBN") gang along with 82 co-Defendants. (3:17-CR-134 ("CR") Doc. No. 1241). All of the defendants named in the Superseding Indictment are members or associates of the UBN. (Id.). Petitioner was charged with RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count One). (3:17-cr-134 ("CR") Doc. No. 1241). The Indictment charged that the Petitioner engaged with her co-Defendants and others to conspire to violate 18 U.S.C. § 1962(c) by conducting and participating, directly and indirectly, in the conduct of the affairs of the UBN enterprise through a pattern of racketeering activity including: multiple acts involving murder in violation of North Carolina and South Carolina law; robbery in violation of North Carolina and South Carolina law;

---
[1] This section is not exhaustive.

multiple acts indictable under 18 U.S.C. §§ 1028, 1343, 1344, and 1951; and multiple offenses involving narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1), 843, and 846. (Id.). The overt acts pertaining to Petitioner include: sending gang dues to co-Defendant Pedro Gutierrez[2] (OA-21, OA-27, OA-34, OA-35, OA-60, OA-77, OA-87, OA-107, OA-109, OA-120, OA-151, OA-165, OA-176, OA-239, OA-267); conducting gang meetings inside the New York Department of Corrections (OA-91, OA-138, OA-230); and sending letters to Gutierrez discussing gang business (OA-148, OA-156)) (Id.).

The day before the joint trial of Petitioner, Gutierrez, and James Baxton commenced, Petitioner moved for the Court's recusal pursuant to 28 U.S.C. § 455. She argued that the Court's "impartiality might reasonably be questioned" because the Court had recused himself in a prior UBN case, United States v. Cureton, 3:14-cr-229-MOC-1, in which a photograph of the Court was found in Mr. Cureton's cell. (CR Doc. No. 1499). Petitioner argued that denying recusal in the instant case would be inconsistent with the recusal in the Cureton case, and because the Court had found that an anonymous jury was warranted Petitioner's case due to the nature and dangerousness of UBN, as demonstrated by the Cureton case. (Id.). The Court disagreed, noting that, in Cureton this Court determined that recusal was warranted in the interests of justice to avoid questions of impartiality or accusations of personal bias, and to ensure a fair trial for the defendant, because Mr. Cureton's specific conduct resulted in a credible threat to the Court, and that threat had received significant media coverage. (CR Doc. No. 1606). By contrast, in the instant criminal case, there was no credible threat against the Court; nothing else would have any impact on the Court's ability to adjudicate this case; and granting a recusal in this case would set the precedent of encouraging judge-shopping. (Id.).

---

[2] Gutierrez was the "Godfather" of the Trey Nine Gangsters who was incarcerated at the New York Department of Corrections.

During a lengthy jury trial, the Government presented evidence that the Petitioner is a member of the Trey Nine Gangsters Hood of the UBN and held a leadership position over many UBN members in North Carolina. She held many personal gang meetings with Gutierrez while he was in the New York Department of Corrections; acted as Gutierrez's eyes and voice in the South; communicated with other gang members to engage in activities including a wire fraud scheme, an armed robbery, and cocaine trafficking; collected dues from lower-ranking gang members; and sent dues to Gutierrez. See (CR Doc. No. 1869 at ¶¶ 19-26) (PSR). Specifically, the Government's evidence included: (1) photographs of Petitioner wearing gang paraphernalia, flashing gang hand signs and/or associating with other UBN members; (2) text messages from 2015 between Petitioner and a co-Defendant using UBN code to discuss matters including cocaine trafficking, scheduling gang meetings, collecting gang dues, and other matters concerning the leadership and organization of the gang, and violent actions taken against Crips; (3) recorded jail calls between Petitioner and other gang members discussing UBN's leadership structure, collection of dues, meetings with high-ranking leaders, smuggling controlled substances into prison for sale, and other issues; (4) visitor logs and commissary account records showing meetings Petitioner had and moneys she paid to co-Defendant Gutierrez; (5) testimony from multiple fellow UBN gang members as to Petitioner's membership in the UBN and crimes undertaken; (6) text messages and phone calls related to an armed robbery and shooting that occurred in August of 2011 which implicated Petitioner, who served as a getaway driver for one of the robbers; (7) text messages and calls indicating Petitioner's participation in a wire fraud scheme in which a non-UBN member filed false tax returns for UBN members including Petitioner; and (8) Petitioner's admission upon her arrest that she was a member of the Bloods.

Petitioner, through counsel, filed a Motion to Dismiss at the close of the Government's

3

Case 3:17-cr-00134-FDW-DSC   Document 3329   Filed 04/01/22   Page 3 of 12

presentation of evidence arguing that the evidence was insufficient to support a RICO conspiracy conviction. (CR Doc. No. 1544). The jury returned a verdict finding that "Cynthia Gilmore a/k/a 'Cynthia Young' a/k/a 'Lady Bynt'" is guilty as charged of RICO conspiracy. (CR Doc. No. 1567 at 1). Petitioner, through counsel, then filed a Motion for Judgment of Acquittal, Motion for New Trial, and Motion to Dismiss. (CR Doc. No. 1560). The Court denied the Motions because, viewing the evidence in the light most favorable to the Government, there was ample evidence to support each element of RICO conspiracy; no new trial was warranted based on the Court's denial of her motion to recuse and for permitting gang affiliation evidence at trial; and because the RICO statutes are not unconstitutional. (CR Doc. No. 1655).

The Presentence Investigation Report ("PSR") calculated the base offense level as 20 because the underlying crimes or criminal activities included robbery. (CR Doc. No. 1869 at ¶ 55). Seven levels were added because a firearm was discharged. (Id. at ¶ 56). Four levels were added because the victim sustained serious bodily injury. (Id. at ¶ 57). One level was added because a firearm, destructive device, or controlled substance was taken. (Id. at ¶ 58). Four levels were added because Petitioner was an organizer or leader of a criminal activity involving five or more participants or was otherwise extensive. (Id. at ¶ 60). The resulting offense level was 36. (Id. at ¶¶ 62, 81). Petitioner had two criminal history points and a criminal history category of II. (Id. at ¶ 102). The resulting advisory guideline range was between 210 and 240 months' imprisonment. (Id. at 132).

The Court sentenced Petitioner within the advisory guideline range to 228 months' imprisonment followed by two years of supervised release. (CR Doc. No. 2234).

Petitioner argued on direct appeal that:[3] the Court erred by deciding to empanel an

---

[3] Petitioner's direct appeal was consolidated with that of co-Defendants Baxton and Gutierrez; only the points relevant to Petitioner are addressed in this discussion.

4

anonymous jury, which deprived her of a fair trial by an impartial jury; the Court abused its discretion by deciding not to recuse himself from presiding over the criminal case; errors occurred during jury selection; her motion to suppress her cell phone and its contents should have been granted; the evidence was insufficient to support the RICO conspiracy; the Court erred by not issuing a special verdict form requiring the jury to indicate specific racketeering activities that each defendant conspired to commit; the Court erred by denying jury instructions regarding the statute of limitations and two federal crimes connected with her tax fraud scheme; the Court should have granted her motion for new trial because she was not a member of UBN and the evidence failed to connect her to the charged crimes; and the sentence was procedurally and substantively unreasonable. The Fourth Circuit Court of Appeals affirmed. United States v. Gutierrez, 963 F.3d 320 (4th Cir. 2020). The United States Supreme Court denied certiorari on October 5, 2020. Gilmore v. United States, 141 S.Ct. 419 (2021).

Petitioner filed the instant pro se § 2255 Motion to Vacate on September 27, 2021.[4] She argues that the Government engaged in misconduct by: (1) "actively participat[ing] in using propaganda in multiple media sources to incite fear and trepidation against anyone associated with the United Blood Nation (UBN)" prior to indictment, after indictment, and during trial (Doc. No. 1 at 4); (2) presenting "false information, extremely prejudicial inaccuracies and false claims concerning a murder in the detention proceedings" (id. at 5); (3) presenting false, highly prejudicial testimony to the grand jury about Petitioner's involvement in the murder of Malik Brown (id. at 7); and (4) failing to provide Petitioner with discovery regarding "a witness['s] … prior conviction for a false identity" and the Government's communications with a "key witness" (id. at 8-9). She

---

[4] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), Rules Governing § 2255 Proceedings in the United States District Courts (addressing inmate filings).

5

did not raise the witness discovery issue on direct appeal because counsel "did not present this argument…." (Id. at 9). Petitioner asks the Court to dismiss, set aside, or vacate her conviction. (Doc. No. 1 at 12).

The United States has filed a Motion to Dismiss arguing that Petitioner's claims are procedurally defaulted from § 2255 review, conclusory, and meritless. (Doc. No. 9). The Court informed Petitioner of her right to respond to the Motion to Dismiss. (Doc. No. 10). Petitioner filed a Response[5] on March 4, 2022 opposing dismissal and additionally arguing (restated and renumbered): (5) the evidence was insufficient to support her conviction (Doc. No. 16 at 2); (6) she was wrongfully indicted and falsely prosecuted as "Cynthia Gilmore" whereas she "has always identified and gone by Cynthia Young" (id.); (7) the Government was allowed to admit improper bad acts evidence and hearsay evidence at the detention hearing (id. at 3-4); (8) the arrest warrant was based on a false affidavit and required a Franks[6] hearing (id. at 4); (9) Petitioner was maliciously prosecuted (id.); and (10) the Government engaged in fraud and misconduct by intentionally using false evidence, *i.e.*, the testimony of Officers Parker and Sardelis, at trial (id. at 3-5).

Petitioner has filed a declaration under penalty of perjury by her attorney, Aaron Michel, and other evidence in support of her claims. See (Doc. No. 1-1); (Doc. No. 1-2); (Doc. No. 16-1); (Doc. No. 16-2); (Doc. No. 18).

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence,

---

[5] Titled "Motion to Grant 28 USC 2255."

[6] Franks v. Delaware, 438 U.S. 154 (1978).

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[7]

As a preliminary matter, the new claims that Petitioner attempts to raise in her Response to the Government's Motion to Dismiss will be dismissed. Motions to vacate filed pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

[7] Petitioner's claims have been liberally construed, restated, and renumbered. Any arguments or claims not specifically addressed in this Order have been considered and rejected.

28 U.S.C. § 2255(f).

Petitioner's judgment became final for purposes of § 2255(f)(1) on October 5, 2020 when the Supreme Court denied certiorari. See Clay v. United States, 537 U.S. 522 (2003); Gilmore, 141 S.Ct. 419. Petitioner had one year, until October 5, 2021, to file a motion to vacate. Petitioner filed her Motion to Vacate within that one-year period, however, the Response to the Government's Motion to Dismiss in which she raises additional claims, was filed nearly five months late on March 4, 2022.

An otherwise untimely claim relates back to the original timely-filed pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). For the Court to find that an otherwise untimely claim relates back to the original timely filed petition, the amended claim must arise from a "common core of operative facts," and may not be dependent on events that are separate both in time and in the substance of the facts upon which the original claims depended. Mayle v. Felix, 545 U.S. 664 (2005).

Petitioner's original Motion to Vacate raised claims of prosecutorial misconduct in relation to media coverage, the presentation of false evidence of Petitioner's involvement in a murder to the grand jury and at the detention proceedings, and discovery violations. Petitioner's new claims regarding insufficiency of the evidence, misidentification, evidentiary errors, a perjured arrest warrant affidavit, malicious prosecution, and the use of false evidence at trial, are entirely distinct from Petitioner's original claims and do not arise out of a common core of operative facts. Accordingly, the new claims do not relate back to the original, timely Motion to Vacate and will be dismissed with prejudice as time-barred.[8]

---

[8] Even if these new claims were not time-barred, they would be dismissed and denied because they were improperly raised for the first time in Petitioner's Response to the Motion to Dismiss, were already decided by the Fourth Circuit

The Petitioner's timely § 2255 claims are procedurally defaulted from federal habeas review. As the Supreme Court has recognized, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (citation and internal quotation marks omitted). Thus, in order to collaterally attack a conviction or sentence based upon errors that could have been pursued on direct appeal, a petitioner must show either (1) "cause" and "actual prejudice" resulting from the errors complained of, or (2) that she is "actually innocent." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Murray v. Carrier, 477 U.S. 478, 488 (1986); Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish actual innocence, the Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." United States v. Courtade, 929 F.3d 186, 191 (4th Cir. 2019) (quoting Bousley, 523 U.S. at 623), *as amended* (July 10, 2019), *cert. denied*, No. 19-428, 2020 WL 129578 (U.S. Jan. 13, 2020). In the context of procedural default, the term "actual innocence" refers to "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

Petitioner's Motion to Vacate raises claims of prosecutorial misconduct that could have been, but were not, raised on direct appeal. It appears that Petitioner is attempting to establish cause and prejudice with regards to the witness discovery claim by arguing that that counsel was ineffective for failing to argue on direct appeal that the Government failed to timely disclose

---

on direct appeal, are procedurally defaulted from § 2255 review, and are meritless for the reasons set forth in the Government's Reply. See (Doc. No. 17).

contact between "the Government" and a "key witness."[9] (Doc. No. 1 at 9). This refers to a January 7, 2019 Letter from the prosecutor to defense counsel disclosing text messages exchanged between an FBI agent and a confidential human source who testified at trial. (Doc. No. 1-2 at 186). Although the messages were primarily "logistical," and contained information "previously disclosed through source reporting," the prosecutor chose to disclose them "in an abundance of caution" although such was not mandated by the Federal Rules of Criminal Procedure, federal statute, or relevant case law. (Id.).

Petitioner has failed to establish that appellate counsel was ineffective for electing not to raise the alleged discovery violation on direct appeal. Her bare claim that counsel "did not present this argument on appeal" is too vague and conclusory to establish ineffective assistance of counsel. (Doc. No. 1 at 9); see United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (vague and conclusory allegations in a § 2255 petition may be disposed of without further investigation by the district court). Moreover, the witness discovery claim is not clearly stronger than the claims that counsel chose to present on direct appeal.[10] See Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotation marks and citations omitted); United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018) ("The ineffective assistance inquiry … requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised."). Nor has Petitioner demonstrated that the conclusory discovery violation argument had a reasonable probability of success had counsel

---

[9] It does not appear that Petitioner is attempting to demonstrate that counsel was ineffective for failing to raise on direct appeal any other the other claims of prosecutorial misconduct that are set forth in the Motion to Vacate.
[10] It is telling that the Government's Letter disclosing the communications is dated more than seven months before Gilmore, Gutierrez, and Baxton filed their consolidated opening brief on direct appeal, yet none of the three appellate attorneys chose to raise the issue.

raised it on direct appeal. See generally Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003) (to secure relief under Brady v. Maryland, 373 U.S. 83 (1963), a defendant has the burden to: (1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material). Petitioner has thus failed to establish a meritorious claim of ineffective assistance of counsel, and therefore, counsel's failure to raise the discovery claim on direct appeal cannot serve as cause and prejudice to excuse her present procedural default. See Mikalajunas, 186 F.3d at 493 (conduct by counsel that is not constitutionally defective cannot serve as cause and prejudice to excuse procedural default).

Construing the Petitioner's arguments liberally, it appears that she may be attempting to argue that the actual innocence exception excuse her procedural default because, for instance, there is insufficient evidence to support the conviction, and she is known as Cynthia Young rather than Cynthia Gilmore. These are arguments of legal insufficiency rather than factual innocence, and thus fail to support the actual innocence exception to the procedural default rule. See Bousley, 523 U.S. at 623-24. Petitioner has not come forward with any evidence demonstrating that it is more likely than not that no reasonable juror would have convicted her had such evidence been presented. Accordingly, the Petitioner's § 2255 claims are procedurally defaulted from federal habeas review, and no exception applies. The Government's Motion to Dismiss will therefore be granted.[11]

## IV. CONCLUSION

For the foregoing reasons, the Motion to Vacate is denied, and the Respondent's Motion to Dismiss is granted.

---

[11] Even if the Petitioner's timely Motion to Vacate claims were not procedurally defaulted, they would be dismissed and denied for the reasons set forth in the Government's Motion to Dismiss. (Doc. No. 9); see also (Doc. No. 17).

11

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED WITH PREJUDICE and DENIED**.

2. Respondent's Motion to Dismiss, (Doc. No. 9), is **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: April 1, 2022

_____
Frank D. Whitney
United States District Judge